**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RONALD L. PORTER, | CIV-F 03-6291 AWI SMS |
| Plaintiff, | ORDER RE: MOTION TO DISMISS AND/OR FOR JUDGMENT |
| v. | |
| DONALD C. WINTER, SECRETARY DEPARTMENT OF THE NAVY, | |
| Defendant, | |

## I. History

These proceedings have a very complex history.  This case does not exist in isolation, but is instead one of a constellation of suits before the district court and the U.S. Equal Employment Opportunity Commission ("EEOC").  For federal employees, there are a variety of methods through which to contest employment actions.  For complaints of discrimination and retaliation covered under Title VII and several other federal anti-discrimination laws, the process starts with contacting a counselor and filing a formal complaint with the federal agency for which the employee works.  The agency investigates and reaches a final agency decision which may or may not include a hearing before an administrative law judge.  The employee can appeal that decision to the EEOC Office of Federal Operations.  Once that process is exhausted, appeal to the federal district courts is permitted.

Plaintiff Ronald Porter was an employee of Defendant Department of the Navy at the

China Lake Naval Air Warfare Center between 1974 and 1999. Porter was employed as a Police Officer in the Safety and Security Department for much of the 1980s. Based on a medical disability, the Navy informed Porter on March 31, 1988 that he was no longer suited to his position. Porter filed discrimination complaint 89-60530-006 with the Navy ("Agency Case 1989-006") on March 2, 1989, alleging that the Navy failed to consider him for the position of Property Control Officer and Locksmith due to disability and sex discrimination, respectively. Doc. 82, Part 2, Ex. 1-A, at 8-9. The Navy dismissed the complaint for untimeliness. Porter appealed to the EEOC which partially reversed the Navy's findings and remanded for further consideration. Doc. 82, Part 2, Ex. 1-B, at 10-13. The record reflects no further action in Agency Case 1989-006; the court presumes that the complaint was ultimately dismissed.

Porter was able to transfer to another position within the China Lake facility, becoming a Plant Account Tech DG-503 with the Services and Support Division, Property Management Branch, Information Systems Department in August 1988. His duties were to receive, store, and dispose of excess equipment. Porter's immediate supervisor at the time was Debra Osgood (sometimes referred to by her maiden name Schlick). On April 17, 1990, Osgood issued Porter a letter of reprimand, citing a number of incidents involving alleged disrespectful behavior and abusive language over a period of several months. On May 1, 1990, Porter contested the reprimand through a non-Title VII/EEOC grievance process; the grievance was addressed to Dillard Bullard, the Director of Quality and Productivity Improvement who had supervisory authority over both Porter and Osgood. On May 7, 1990, Bullard determined the reprimand was proper. Doc. 82, Part 3, Ex. 19, at 131-34. On May 21, 1990, Porter filed a second grievance, addressed to Douglas Cook, the Commander of the China Lake facility. Doc. 82, Part 3, Exs. 21 and 22, at 145-46. The Navy treated the second grievance as an appeal of the first. On August 22, 1990, Cook determined that the reprimand was proper. Doc. 82, Part 3, Ex. 24, at 152-53. Under applicable regulations, Cook's decision was due by August 20, 1990 (90 days after Porter's filing of the grievance).

At the time, Porter had a pay grade of DG-503-2. In August 1989, he was denied a non-competitive step promotion to DG-503-3. On May 1, 1990, Porter met with a counselor

regarding his contention that Osgood discriminated against him on the basis of his sex. On July 17, 1990, Porter filed discrimination complaint 90-60530-002 with the Navy ("Agency Case 1990-002") alleging he was "Not receiving promotions, increments or bonuses equal to that being given to the female employees.... [and] Treatment diff[e]rent than that of female employees" that was taking place on an ongoing basis. Doc. 82, Part 2, Ex. 1-C, at 14-15. On July 26, 1990, the Navy dismissed Porter's complaint due to untimeliness. Porter appealed to the EEOC but during the pendency of the appeal, the Navy reversed itself and decided to address the issue of the denial of a step promotion. On June 2, 1992, the Navy's investigation resulted in a recommended finding of sex discrimination. On July 2, 1992, the Navy offered to promote Porter to DG-503-3 retroactive to August 13, 1989 with backpay and to provide a workplace free of discrimination and retaliation. On August 21, 1992, Porter rejected the offer as insufficient. The Navy implemented its offer and dismissed the case as moot on October 1, 1992. Porter appealed to the EEOC on October 2, 1992, arguing the offer (1) did not include increments or bonuses, (2) only provided for a 4% increase instead of a customary 10% increase, (3) did not include interest on backpay or consider the possibility of additional increments based on retroactive promotion, and (4) imposed onerous conditions which would interfere with his access to the EEOC complaint process in the future. On April 19, 1993, the EEOC found the denial of interest and imposition of conditions on EEOC access to be appropriate but remanded to the Navy in order to determine the proper bonuses, increments, and percent increases that were due. Porter v. Kelso, EEOC DOC 01930051, 1993 WL 1505233 (E.E.O.C. April 19, 1993). Both parties sought reconsideration. On August 4, 1994, the EEOC found that the conditions on EEOC access were invalid and that Porter was entitled to interest on backpay. Porter v. Dalton, EEOC DOC 05930767, 1994 WL 1841286 (E.E.O.C. Aug. 4, 1994). The case was again remanded to the Navy. On September 27, 1995, the Navy again dismissed the claim as moot. On appeal, the EEOC reversed the Navy's decision and remanded. Porter v. Dalton, EEOC DOC 01960817, 1996 WL 688437 (E.E.O.C. November 13, 1996). On March 13, 1997, the Navy again appears to have dismissed the case. On appeal, the EEOC had to, again, direct the Navy to proceed in compliance with previous EEOC orders, specifically finding

Because the agency has ignored the Commission's Order to supplement the record with information pertaining to pay bonuses and increments, we find it appropriate to draw an adverse inference against the agency that the requested information would have reflected unfavorably on the agency's position, and issue a decision in the appellant's favor.....

The agency is ORDERED to pay appellant annual bonuses and increments for the period in question in the same amount as paid to comparable employees who were rated as Fully Successful during the relevant period. If the comparative employees received varying bonus amounts, the agency must calculate the average bonus and award appellant that amount. The agency must make this award including the appropriate amount of interest, no later than thirty (30) calendar days after the date this decision becomes final.

Porter v. Danzig, EEOC DOC 01973979, 1999 WL 448091*2-3 (E.E.O.C. June 22, 1999).

Porter submits that the Navy has not complied with the EEOC's order and that no further action has been taken in Agency Case 1990-002.

While Agency Case 1990-002 was being litigated, Porter filed other complaints, alleging retaliation against him for filing Agency Case 1990-002. On October 2, 1990, Plaintiff contacted an EEO counselor. On January 17, 1991, Porter filed discrimination complaint 91-60530-003 with the Navy ("Agency Case 1991-003") alleging (1) Osgood argued with him in front of co-workers on September 25, 1990 and (2) the Navy did not properly and timely investigate the grievance addressed to Cook on May 21, 1990. Doc. 82, Part 2, Ex. 1-D, at 16-18. The Navy conducted an investigation and issued a report of investigation on October 27, 1992. On October 19, 1993, the Navy issued a final decision finding no discrimination/retaliation; Plaintiff appealed to the EEOC. In the midst of the appeal, Porter changed position within the Navy. He was given a temporary detail to help with the workload in another office on January 17, 1993. On June 13, 1993, Porter formally changed positions and became a Computer Assistant DG-335-03 of the Computing Division, Computational and Information Services Branch, still within the Information Systems Department. In his new position, Porter was no longer under the supervision on Osgood. On July 12, 1996, the EEOC found Agency Case 1991-003 to be moot based on the change, noting that Porter alleged "he was transferred to a different branch at his request, and he did so to get away from his previous supervisor's mistreatment." Porter v. Dalton, EEOC DOC 05950024, 1996 WL 410690, *2 (E.E.O.C. July 12, 1996). On August 9, 1996, Porter filed suit in federal court seeking review of Agency Case 1991-003; the original case Civ. Case No. 96-5933 before Judge Robert Coyle. On May 18, 1998, the parties stipulated to

dismissal without prejudice and waiver of statute of limitations pending the outcome of

discrimination complaint 93-60530-015, filed on September 9, 1992 ("Agency Case 1993-015").

Porter alleged that:

the following actions were taken against me as reprisal for fil[]ing a sex discrimination complaint against my supervisor.

a. Receiving a poor performance appraisal without justification, August 1990 through July 1991.

b. Intentional failure to follow the Naval Weapons Center's rules regulations and proce[]dures for the issuing of the performance appraisal (by Debra Schlick) and the reconsideration process (by Dillard Bullard).

c. Receiving a previous poor performance appraisal, for August 1989 through July 1990.

d. Not having the proper ability to apply for promotional opportunities. Because, as of this date, I have not received a proper performance review to submit with my application for promotional opportunities as required by the Center's policy.

Doc. 82, Part 2, Ex. 1-G, at 36. Porter originally received his 1990-91 performance evaluation of

less than fully successful on October 22, 1991. On March 6, 1992, it was raised to fully

successful through a non-Title VII/EEOC reconsideration process (the reference to Bullard under

section b). The Navy rejected his complaint for failure to timely meet with a counselor. Upon

appeal and reconsideration, the EEOC determined that Porter timely raised challenges to the

1990-91 performance evaluation and the process by which Osgood issued that evaluation; all

other issues were untimely raised. See Porter, v. Kelso, EEOC DOC 01931180, 1993 WL

1506632 (E.E.O.C. May 18, 1993); Porter v. Dalton, EEOC DOC 05930873, 1994 WL 1841346

(E.E.O.C. January 21, 1994); Porter v. Dalton, 1994 EEOPUB LEXIS 379 (E.E.O.C. June 28,

1994); Porter v. Dalton, 1994 EEOPUB LEXIS 2016 (E.E.O.C. May 25, 1995). These two

issues were heard before an EEOC Administrative Law Judge on December 10, 1997 and August

13, 1998. The Administrative Law Judge issued his decision on April 21, 2001, finding Osgood

retaliated against Porter in giving him a poor 1990-91 performance evaluation but finding no sex

discrimination. However, the opinion also found that Porter had already received all equitable

monetary relief due; the Navy had already raised his performance evaluation which resulted in an

additional salary increment. The Administrative Law Judge ordered the Navy to take corrective

action in training its employees at fault and establishing better procedures. The Navy refused to

implement those requirements, arguing that since Porter's performance evaluation had already

been raised to fully successful, no further relief was due.  Porter appealed and on April 24, 2003,

the EEOC reversed the Navy's decision and ordered:

> (1) The Agency shall rewrite the complainant's narrative that accompanied his less than fully successful performance rating; if that is not possible because of the lengthy period time period involved, the Agency shall delete the negative language therein that was offered as justification for the less than fully successful rating;
>
> (2) The Agency shall pursue corrective action, including but not limited to, appropriate EEO training with the discriminating officials found at fault herein.
>
> (3) The Agency shall review its performance appraisal process, and shall take whatever steps may be deemed appropriate to prevent the recurrence of retaliatory treatment during the process, e.g., take steps to ensure that vague evaluation criteria are not used in performance plans and performance feedback sessions, and that performance feedback consists of specific details on how an employee can perform his/her job to meet expectations.

Porter v. Johnson, 2003 EEOPUB LEXIS 2354, *12-13 (E.E.O.C. April 24, 2003).  On

reconsideration, Porter sought additional monetary damages and corrective action, but was

denied. Porter v. Johnson, 2003 EEOPUB LEXIS 4146 (E.E.O.C. July 16, 2003).  At this point,

Porter revived Agency Case 1991-003/Civ. Case No. 96-5933, filing the present case on

September 22, 2003.

As the prevailing party, Porter sought attorneys fees in Agency Case 1993-015 on

September 13, 2003.  The Navy only granted him a small part of his request.  Porter appealed to

the EEOC, which slightly increased the amount of attorneys fees. Porter v. England, 2005

EEOPUB LEXIS 4697 (E.E.O.C. September 20, 2005).  Porter unsuccessfully sought

reconsideration as to the amount. Porter v. Winter, 2006 EEOPUB LEXIS 1519 (E.E.O.C. April

12, 2006).  On July 11, 2006, Porter filed suit in district court to challenge the amount of

attorneys fees, Civ. Case No. 06-0880 before Judge Lawrence O'Neill.  In the second amended

complaint, Plaintiff stated "Porter does not wish to re-litigate the liability of his EEO Complaint.

It is being included in this 2nd Amended Complaint to ensure the court has jurisdiction. Porter

intends to pursue the liability issue if the court determines that putting the Navy's liability at

issue is the only way he can achieve compliance with the statutes and congressional intent

governing his attorney fees/cost." Civ. Case No. 06-0880, Doc. 17, at 7:27-8:3.  Judge O'Neill

6

dismissed the case for lack of jurisdiction.  In a motion for reconsideration, Porter stated that he wanted to litigate the substance of the claim (Agency Case 1993-015) to seek additional damages.  Judge O'Neill denied the motion and the matter is up on appeal with the Ninth Circuit. On January 5, 2006, Porter also appealed the EEOC's initial decision on attorneys fees; this appeal was filed before the start of Civ. Case No. 06-0880.  The EEOC issued its opinion on May 7, 2008, increasing the amount of fees due. Porter v. Winter, 2008 EEOPUB LEXIS 1613 (E.E.O.C. May 7, 2008).  How the EEOC order interacts with the district court case and the Ninth Circuit appeal is unclear.

On April 20, 1993, in the midst of his temporary detail, Porter filed discrimination complaint 93-60530-021 with the Navy ("Agency Case 1993-021") alleging "1. Unfair performance evaluation and performance appraisal procedure, supervisor giving false information to performance appraisal reviewer. 2. Supervisor having the contractor move my desk into a corner and disrupt my working space, with 3 empty desks available in my office, while I was on temporary assignment. 3. My supervisor rekeyed the building, locking me out of my permanent workspace without advising me . This is continuing reprisal. 4. Supervisor having contractor call her when I am in my permanent work space." Doc. 82, Part 2, Ex. 1-I, at 48-49. The Navy determined that Porter's complaint regarding the 1991-92 performance appraisal was untimely and all other issues mooted by his shift in position to Computer Assistant.  On appeal, the EEOC agreed. Porter v. Dalton, EEOC DOC 01933937, 1993 WL 1508681 (E.E.O.C. Nov. 30, 1993); Porter v. Dalton, 1994 EEOPUB LEXIS 4165 (E.E.O.C. June 30, 1994) (denying reconsideration).  Porter does not appear to have appealed this decision any further.

On May 12, 1994, Porter filed a discrimination complaint with the Navy ("Agency Case 1994-021") in which he alleges "The agency failed to follow the compliance order issued by [Office of Federal Operations] of EEOC. This was done as reprisal against me for filing an EEO complaint." Doc. 82, Part 2, Ex. 1-L, at 62.  It is not clear which compliance order Porter is referring to and no other information is available concerning this discrimination complaint.

On June 6, 1995, Porter filed discrimination complaint 95-60530-016 ("Agency Case 1995-016") alleging retaliation for Porter's use of official time to attend a management-union

7

meeting regarding EEOC complaints in February 1995. Doc. 82, Part 2, Ex. 1-M, at 63. The Navy had informed Porter on March 7, 1995 that he could not use official time to perform his union representation work and that all such time he had already spent would be converted to annual leave time. On April 14, 1995, the Navy reversed the decision to convert the time already spent form official time to annual leave. When Porter filed his complaint, the Navy dismissed it as moot. Upon appeal, the EEOC reversed and remanded, finding that while the conversion of time was reversed, it was unclear whether Porter could use official time in this manner in the future. Porter v. Dalton, 1996 EEOPUB LEXIS 2816 (E.E.O.C. June 25, 1996); Porter v. Dalton, 1998 EEOPUB LEXIS 1592 (E.E.O.C. March 5, 1998) (reconsideration denied). Ultimately, Porter filed suit in district court, Civ. Case No. 01-6302 which was handled by Magistrate Judge Sandra Snyder. In a bench trial, Judge Snyder found no discrimination or retaliation on December 21, 2004. Porter appealed to the Ninth Circuit; Judge Snyder's decision was affirmed on February 26, 2007.

While these cases were moving forward, Porter suffered adverse employment action from two reductions in force. On July 31, 1996, Plaintiff changed positions, switching from a Computer Assistant in the Information Systems Department to a Computer Assistant in the Engineering Weapons/Targets Department. It appears that this shift was related to a reduction in force that reduced Porter's pay grade from DG-4 to DG-3, but that is not clear. See Kohfield v. Navy, 75 M.S.P.R. 1 (M.S.P.B. May 9, 1997). The Navy instituted a further reduction in force on November 19, 1999, removing Porter from Navy employment. On December 15, 1999, Porter filed discrimination complaint 00-60530-003 ("Agency Case 2000-003"), alleging age discrimination and reprisal for the filing of past complaints, citing Agency Cases 1990-002, 1991-003, 1993-015, and 1995-016 specifically. Doc. 82, Part 2, Ex. 1-N, at 65. Porter sought reconsideration of the reduction in force through a non-Title VII/EEOC process; the Navy denied his request April 26, 2000. On April 13, 2001, Porter filed discrimination complaint 01-60530-011 ("Agency Case 2001-011") in which he again alleges age discrimination and reprisal, stating "I was no[t] given position on [Priority Placement Program] and [Reemployment Priority List] lists after being RIFed on 11-19-1999. I was not put on the Reemployment Priority List. The

agency rehired in my series with younger employees. [I was] denied jobs listed on my RPL."
Doc.82, Part 2, Ex. 1-O, at 67. Agency Cases 2000-003 and 2001-011 appear to have been
jointly processed. They were heard before an EEOC Administrative Law Judge on June 23-24
and July 15-16, 2004. The Administrative Law Judge issued his decision on September 24,
2004, finding no discrimination or hostile work environment retaliation. Doc.82, Part 2, Ex. 1-P,
at 90. On November 19, 2004, the Navy made a finding of no discrimination. Porter appealed,
but the EEOC affirmed. Porter v. Winter, 2006 EEOPUB LEXIS 6662 (E.E.O.C. December 4,
2006); Porter v. Winter, 2007 EEOPUB LEXIS 820 (E.E.O.C. March 9, 2007) (reconsideration
denied). On June 7, 2007, Porter filed suit in federal court, Civ. Case No. 07-0825.

This case (03-6291) sat largely quiet until the Navy filed a motion to dismiss on July 18,
2007. Doc. 40. The court found that, as plead, this case appeared to be duplicative of 07-0825
and possibly 06-0880; the court ordered Porter to file an amended complaint to clarify the subject
matter of this case in distinction to his other cases. Doc. 49. Plaintiff filed the First Amended
Complaint ("FAC") in response. Doc. 51. The Navy filed a motion to dismiss, arguing lack of
subject matter jurisdiction due to mootness. Doc. 56. The court again found substantial overlap
with the other district court cases and directed Porter to file an amended complaint. Doc. 69.
Plaintiff filed the Second Amended Complaint ("SAC") in response. Doc. 71.
Contemporaneously, Porter filed a motion to consolidate 03-6291 and 07-0825. Doc. 72. That
motion has not been ruled upon. The Navy filed a motion to dismiss and/or motion for summary
judgment due to mootness. Doc. 79. Porter filed an opposition. The matter was taken under
submission without oral argument.

## II. Legal Standards

Fed. R. Civ. Proce 12(b)(1) allows for a motion to dismiss based on lack of subject matter
jurisdiction. It is a fundamental precept that federal courts are courts of limited jurisdiction.
Vacek v. UPS, 447 F.3d 1248, 1250 (9th Cir. 2006). Limits upon federal jurisdiction must not be
disregarded or evaded. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978).
"A federal court is presumed to lack jurisdiction in a particular case unless the contrary

affirmatively appears." A-Z Int'l v. Phillips, 323 F.3d 1141, 1145 (9th Cir. 2003); General Atomic Co. v. United Nuclear Corp., 655 F.2d 968 (9th Cir. 1981).  The plaintiff has the burden to establish that subject matter jurisdiction is proper. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  A Rule 12(b)(1) motion may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

When a defendant makes a factual challenge "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  The court need not presume the truthfulness of the plaintiff's allegations under a factual attack. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  Where the jurisdictional issue and the merits of the case are not factually completely intermeshed or intertwined, the court may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, including resolving factual disputes when necessary. St. Clair v. Chico, 880 F.2d 199, 201-02 (9th Cir. 1989).

A case becomes moot when "by virtue of an intervening event, a court [] cannot grant 'any effectual relief whatever.'" Calderon v. Moore, 518 U.S. 149, 150 (1996), quoting Mills v. Green, 159 U.S. 651, 653 (1895).  "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." Iron Arrow Honor Soc. v. Heckler, 464 U.S. 67, 70 (1983), citations omitted.

### III. Discussion

The Navy's argument has four main parts: 1) this suit is limited to three discrete actions due to the lack of exhausting administrative remedies; 2) due to its narrow scope, the case is not justiciable as no relief can be granted; 3) Porter fails to allege any adverse action; and 4) the claims should be barred by the theory of laches.  Only the first two issues can be addressed as there is a lack of subject matter jurisdiction due to mootness.

**A. Scope of This Suit**

Porter has been repeatedly warned that this suit appears to overlap with other cases. The court first stated that "As these events has given rise to separate district court cases (which do not appear to be amenable to consolidation at this point), the court must focus on the allegations and causes of action present in this case and determine how they are distinct from the allegations and causes of action in the other cases." Doc. 49, November 1, 2007 Order, at 4:9-12. Porter was given the opportunity to file a new complaint, but failed to resolve the problem. The court specifically stated:

> Plaintiff appears to be improperly raising identical claims in at least two separate cases. Such a tactic can not be tolerated. In all of these district court suits, Plaintiff is alleging sex and/or age discrimination/retaliation based on the same exact events. After disregarding the November 1, 2007 Order's admonitions regarding duplicative claims, the court is close to coming to a final conclusion that Plaintiff is either unwilling or unable to make clear which claims belong in this case. If Plaintiff can not make his pleadings clear, the court will have to take an active hand in interpreting his complaint. While the complaint must be construed in the light most favorable to Plaintiff, the court would be forced to read his claim narrowly to avoid jurisdictional problems.

Doc. 69, March 31, 2009 Order, at 11:24-12:4. In the SAC, Porter states that,

> the instant case before the Court, includ[es] the discrete incidents as well as the continuing [] hostile working environment that flowed from the 1990-002 case, into the issues of the 1991-003 case and then into the issues of the 1993-015 case had forced Porter to leave his Plant Account Technician DG-503 position and into the Computer Assistant DG-335 position by 1993, a position he would not have otherwise taken absent the hostile work environment. Under the RIF, the Navy declared Porter's specific DG-335 position assignment was to be abolished. Porter was the only DG employee of any DG series at China Lake to be separated by the RIF. The effects of the alleged hostile work environment were not irrevocably, nor unequivocally remedied. Navy has not restored Porter to federal service, even though its actions (as demonstrated by those cases which already have findings of discrimination and/or reprisal) caused injury to occur.

Doc. 71, SAC, at 15:4-15. This framework for the case does not resolve the concerns raised in the prior orders. Upon review, the court finds that Agency Case 1991-003 forms the substance of this case.

**1. Agency Cases 2000-003 and 2001-011**

All issues having to do with the reduction in force which lead to Porter's separation from Navy employment on November 19, 1999 is properly part of 07-0825 and not this case. In the operative complaint of 07-0825, Porter states,

13. The combined 2000-003 and 2001-011 cases allege reprisal and age discrimination claims rooted in both Title VII and the Age Discrimination in Employment Act ("ADEA"), claiming Navy discriminated and/or reprised against Porter so as to "collectively ... create a hostile work environment" against him.

14. In the 2000-003 administrative case, Porter alleged that based on his protected EEO activities, Navy engaged in discriminatory and/or retaliatory actions against him, including but not limited to the following:

a. Separating Porter from employment on or about November 19, 1999 pursuant to a Reduction in Force ("RIF") without registering Porter to obtain all benefits he was entitled to under the Re-employment List ("RPL"), Repromotion Priority List ("RP"), and/or Priority Placement Program ("PPP") prior to the effective date of the 1999 RIF;

b. Giving Porter only a level 3 [fully successful] performance evaluation for the period ending on July 31, 1999 and failing to follow rules regarding bonuses;

c. Denying Porter's request for reconsideration of his separation through RIF on or about April 26, 2000;

d. Repeatedly denying Porter higher performance ratings or the opportunity to receive such ratings, as well as denying him the opportunity to obtain numerous other positions at China Lake, from 1996 through 1999;

e. Unfairly administering its 1999 RIF with respect to Porter's retention rights;

f. Creating a continual hostile environment based on his prior protected activities by, among other things, harassing him by way of denying higher performance ratings and not selecting him to certain employment positions prior to and after the 1999 RIF;

g. Unfairly designating Porter's position for abolishment for the 1999 RIF; and,

h. Unfairly implementing the Demonstration Project's procedures to discriminate and/or retaliate against Porter;

15. In the 2001-011 administrative case, Porter alleged that based on his protected EEO activities, Navy further engaged in discriminatory and/or retaliatory actions against him by various acts and omissions, including but not limited to:

a. Not properly registering him in the Priority Placement Program ("PPP") and/or Re-employment List ("RPL") maintained by its Human Resources Services Center on or about October 24, 2000, as well as failing to comply with its PPP, the Repromotion Priority List ("RP"), and its Merit Promotion Policy or other employee protections, after the 1996 RIF which impacted his standing in the 1999 RIF and not properly registering him in the PPP, and/or RPL maintained by its Human Resources Services Center, and failing to comply with its PPP, the Repromotion Priority List ("RP"), and its Merit Promotion Policy or other employee protections through and including the 1999 RIF;

b. Not following its RP, PPP and/or RPL, by placing Porter into a nonexistent position and failing to follow Navy policy regarding filling vacant jobs by failing to offer him a position at China Lake subsequent to the 1999 RIF, failing to inform him of open positions, failing to inform him of positions being filled, and/or failing to assist him in qualifying for such positions through RP, PPP or RPL;

c. Failing to follow appropriate laws, rules, policies and guidances regarding the RPL, RP

and PPP when conducting its RIF by, among other things, failing to provide Porter the opportunity to obtain outstanding performance reviews, by actually assigning to perform the RIF Review Navy employees that previously had handled administrative complaints raised by Porter, and failing to properly follow its own performance review procedures; and

d. Filling any position after the 1999 RIF for which Porter was qualified, using Naval EEO employees who had previously worked on Porter's prior administrative complaints to make such decisions about filling positions for which Porter was qualified, and by not clearly addressing the issue that Porter was not being offered the position in a subsequent administrative report of investigation; and

e. Engaging in actions which deny Porter employment at China Lake up to the present day.

16. The instant case before the Court alleges discrete incidents as well as a continuing hostile working environment that flows throughout the Navy's RIF processes.

Civ. Case No. 07-0825, Doc. 95, First Amended Complaint, at 3:20-6:3.

**2. Agency Case 1993-015**

Porter states, "The 1993-015 case issues as defined by Navy are: (1) on 22 October 1991, Porter was given a poor performance appraisal for the performance evaluation period beginning 1 August 1990 and ending 31 July 1991, and (2) Osgood Schlick failed to follow agency rules, regulations, and procedures for the issuance of the performance appraisal for the period 1 August 1990 through 31 July 1991." Doc. 71, SAC, at 10:11-15. The matter was heard by EEOC Administrative Law Judge Dennis Carter, who found on April 12, 2001 that "Supervisor Schlick unlawfully retaliated against the Complainant for his prior EEO activity when she rated him as less than fully successful for the appraisal period ending July 31, 1991 and that she should have provided him a fully satisfactory rating. I further conclude that the preponderance of the evidence did not establish that Supervisor Schlick unlawfully discriminated against the Complainant based upon his gender." Doc. 83, Part 5, Ex. M, at 8. The opinion noted that the Navy had already upgraded Porter's performance evaluation to fully successful in 1992 and provided him with an increase in salary increment, rendering equitable relief largely moot. Plaintiff sought attorneys fees and costs and was awarded $4,395 which was less than the amount he requested. Plaintiff filed Civ. Case No. 06-0880 to recover attorneys fees and costs. The case was heard by Judge Lawrence O'Neill who found the district court lacked jurisdiction to hear a case based solely on a

request for attorneys fees and costs.  In a motion for reconsideration, Porter stated, "I failed to clearly identify my intent and desire [] for a trial de novo on my discrimination complaint.  I apologize to the court for my failure to adequately identify my intentions and desire and hope that failure does not deny me the opportunity to pursue my discrimination complaint.  I have attached a proposed second amended complaint, which I believe will meet the courts approval." Civ. Case No. 06-0880, Doc. 32, at 2:23-3:5.  The attached complaint states:

> That the Navy retaliated against Porter by changing his working condition, by intentionally and selectively rewriting and expanding only his performance plan making it unique only to him, making it so subjective that a[n] unfair evaluation would be difficult to challenge, by not identifying why Porter's performance plan was being changed, by not identifying why other employee's performance plans were not being changed, by requiring that a third party be present during his periodic and final performance evaluation sessions with his supervisor, not required for other employees, by only providing Porter with vague and insufficient detail during performance evaluation sessions, denying him the opportunity to identify and understand how or why he was not meeting his performance expectations or what he need[ed] to do to meet his performance expectations, by not identifying what he need[ed] to do to receive a highly satisfactory or outstanding performance evaluation, by discussing his performance evaluations in front of contract employees - identifying that his performance was the lowers her superiors had ever seen, by making derogatory remarks about him in from of Contractor employees regarding his team spirit, criticizing him on his failure to participate in group potlucks and other social events, by the Navy's human resources personnel representatives failure to assist him in receiving a fair, unbiased, and measurable performance plan and not giving any consideration to his concerns regarding his performance plan written by his supervisor, by the Navy's failure to properly process his performance reconsideration, by not rewriting his performance review after it was upgraded and by not giving him a fair performance evaluation identifying his many accomplishments.

> Porter's claim is to be considered to be a hostile work environment based on his prior protected activities and the Navy's failure to be pro-active in providing him a workplace free from discrimination.

Civ. Case No. 06-0880, Doc. 32, at 8:9-9:7.  Reconsideration was denied with the advice that "Plaintiff cannot now alter his position claiming that he wishes a de novo review.  Nevertheless, should that be his desire, the related cases, in which the substantive merits of the discrimination claim are at issue, is pending in [03-6291 and [07-0825]." Civ. Case No. 06-0880, Doc 34, at 3:3-6.  Porter has appealed the decision to the Ninth Circuit, stating "I am appealing the dismissal of the case, *the denial of the right to amend the complaint*, the interpretation of law to the facts, and any related matter." Civ. Case No. 06-0880, Doc. 36, at 1, emphasis added.  The case was argued and submitted on September 17, 2009; no ruling has been issued.  Based upon these representations in the 06-0880 case, the substance of Agency Case 1993-015 case and the claim

**14**

of hostile work environment arising from the incidents covered by that case are not part of this case. The 06-0880 case is useful in creating a temporal boundary for this case. Events relating to the October 22, 1991 performance evaluation for the 1990-91 period and everything after those events can not be the basis of this suit.

**3. Agency Case 1991-003**

The Navy alleges that this case comprises solely of the 1991-003 EEO complaint, specifically the claims that:

> 1. On September 26, 1990, Osgood allegedly discriminated on the basis of gender or retaliated against plaintiff by getting into an argument with him which included references to his performance evaluation within hearing of two contractor employees;
> 2. Capt. Cook allegedly discriminated on the basis of gender or retaliated against plaintiff by failing to decide his first grievance within 90 days of May 21, 1990; and
> 3. Capt. Cook allegedly discriminated on the basis of gender or retaliated against plaintiff by failing to personally investigate and decide his second grievance, which concerned the processing of the first grievance.

Doc. 80, Brief, at 29:17-28. These are the three actions discussed in the October 27, 1992 report of investigation on the 1991-003 case. Doc. 82, Part 2, Ex. 1-E, at 21. Porter alleges that the 1991-003 case

> concerns acts that begin approximately May 1990 and continue well into 1991 and beyond. For example, the acts include Osgood's inappropriately discussing Porter's performance and performance plan in front of other employees on 25-26 September 1990, the 22 June 1990 Osgood e-mail to Porter, the discriminatory processing of two 21 May 1990 grievances submitted to Capt. Cook (the base commander and EEO Officer), the discriminatory performance plan that Osgood gave Porter on 2 October 1990 and the discriminatory processing of his complaints about that plan, Navy's request for Porter's input into his performance plan and Navy's response to the proposed performance plan Porter submitted to Osgood on 26 October 1990, the discriminatory processing of this case that goes in 1993, and the 1990-002 case processing. The performance plan dispute provides one basis for Porter to receive additional increments and bonuses for the 1990-1991 evaluation year. The subsequent case, [06-0880] concerns the actual appraisal Osgood gave Porter on the performance plan and her misuse of the appraisal process, but does not address the issue that the performance plan itself was discriminatory.

Doc. 71, SAC, at 5:23-8:4. Porter also generally alleges he has been discriminated against on the basis of age and that the Navy has created a "hostile work environment across these consecutive claims [EEO complaints]." Doc. 71, SAC, at 2:1-2 and 11:17-18. Porter also implicitly alleges a constructive discharge claim across the various EEO cases: "By not providing curative and

remedial action to stop Osgood's harassment, Navy had constructively, involuntarily transferred Porter out of his Plant Account Technician DG-503 series job and made that transfer permanent in June 1993 by permanently changing him to a Computer Assistant DG-335 series position, thereby preventing Porter from returning to his old job even though Porter subsequently sought the same or similar Plant Account Technic[i]an DG-503 series position of his former job." Doc. 71, SAC, at 9:3-9.

The court finds the allegations regarding the discriminatory performance plan, the requests for Porter's input, and the Navy's response to Porter's proposed performance plan were part of the 06-0880 case. Most specifically, these issues are part of the basis of an EEOC appeal decision in the 1993-015 case. The opinion stated in relevant part,

> On October 2, 1990, [Osgood] presented an extended four-page performance plan to complainant tailored specifically to him. Complainant's suggestions were annotated on this draft performance plan. Around October 26, 1990, complainant submitted a one-page performance plan, but [Osgood] was advised by the Personnel Management Assistant (PMA) to ignore it and evaluate complainant using the four-page draft plan....Finally, we find it significant that [Osgood] unilaterally instituted a new performance plan solely for complainant that included additional duties for him shortly after complainant filed EEO complaints, while the agency's other plant account technician's performance plan remained unchanged. In light of this evidence, we conclude that complainant established by a preponderance of the evidence that the agency's articulated reason for complainant's unsatisfactory evaluation was a pretext for unlawful reprisal.

Porter v. Johnson, 2003 EEOPUB LEXIS 2354, *1 and *10 (E.E.O.C. June 22, 1999). Porter himself recognized this fact as his proposed complaint in the 06-0880 case included the claim that "the Navy retaliated against Porter by changing his working condition, by intentionally and selectively rewriting and expanding only his performance plan making it unique to him, making it so subjective that a[n] unfair evaluation would be difficult to challenge, by not identifying why Porter's performance plan was being changed, by not identifying why other employee's performance plan was not being changed." Civ. Case No. 06-0880, Doc. 32, at 8:9-14.

Even with that clarification, there is a discrepancy in what the two parties believe is part of Agency Case 1991-003. Porter refers to at least one additional act (June 22, 1990 e-mail) and alleges a hostile work environment. The Navy argues that everything except for the three discrete actions listed above can not be considered as they are claims that have not been

administratively exhausted.

> Under Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge....Subject matter jurisdiction extends over all allegations of discrimination that either fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination....

> In determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case.

B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1099-1100 (9th Cir. 2002).

The report of investigation stated "The employer has accepted for investigation [] the following issues of alleged discrimination on the basis of reprisal for filing prior EEO Complaints (15 March 1989 and 19 September 1990): Your supervisor entered your work site on September 25 1990 and started an argument with you. The commanding Officer intentionally took 90 calendar days to respond to a[] grievance, dated 21 May 1990. The commanding Officer failed to investigate the issues outlined in a second grievance, also filed on 21 May 1990." Doc. 82, Part 2, Ex. 1-e, at 21. On his original EEO complaint form, Porter checked the line that claimed discrimination was based on sex discrimination while not checking the line that claimed retaliation. However, Porter included a narrative description of his claims in which he said,

> The evidence shows that my supervisor Debra Osgood, violated a number of regulations, such as: Bring[ing] up and discussion an employee['] performance evaluation in a non private manner, intentionally tr[y]ing to start an argu[]ment with an employee, showing intentional disrespect towards an employee in front of contractors, stating that an employee received a poor performance evaluation because he did not attend social functions and taking actions to effect retal[ia]tion against an employee for filing an EEO Complaint.

> The preponderance of evidence shows that my supervisor Debra Osgood intentionally tried to start an argu[]ment and would not back off, continuing with her intentional efforts to make me angry, even after sever[]al efforts on my part to end the situation. It only ended after I stated I had nothing further to say. The only conclusion that can be made from this is that she was tr[y]ing to make me mad and say somet[h]ing stupid, so that she could use it against me. This shows intentional retribution and retaliation, with only one possible reason, an on going EEO Complaint I had previously filed against her.

Doc. 82, Part 2, Ex. 1-D, January 16, 1991 EEO Complaint Form, at 16-17. Porter attached a

memorandum to the EEO complaint; in it he made similar allegations:

> Debra Osgood came out to my work area with the intention to start an argument with me, trying to make me say something stupid, so she could write me up. During the conversation she kept on trying to upset me and make me mad, even though I tr[i]ed to get her to back off. During the discussion she accused me of not doing my job, she discussed my performance evaluation, she told me I was not a team player because I did not go to the social functions and she also made a very strong inference that she did not trust me. This was all done in front of the contractor employees.

> Debra Osgood did this as direct retribution for filing a EEO Complaint against her in the past. She is not only doing this to try and get evidence against me to take further retribution, but also [sic] used her knowledge that I am handicap[p]ed and was intentionally trying to cause me ad[d]itional stress.

Doc. 82, Part 3, Ex. 26, at 158. In addition, Porter was unhappy with the Navy's framing of the

issues and wrote a letter on February 26, 1991 to object. In it he reiterated that

> My supervisor, Debra Osgood came out to my work place on September 26, with the intention to start an argu[]ment with me, continually trying to upset me, so that I would say something stupid, so she could write me up. During the conversation she kept on trying to upset me and make me mad, even though I tr[i]ed to get her to back off several times. During the discussion she accused me of not doing my job, she discussed my performance evaluation, she told me I was not a team player because I did not go to the social functions and she made a very strong inference that she did not trust me. This was all done in front of contractor employees. Debra Osgood did the above as direct retribution for fil[]ing a[n] EEO complaint against her in the past, and in the hope of gaining evidence against me to take further retribution.

Doc. 82, Part 3, Ex. 35, at 213. Porter was informed by letter on February 28, 1991 that "the

allegations originally accepted for investigation will remain unchanged. A copy of reference [of

the February 26, 1991 letter] will be made available to the investigator assigned to your case."

Doc. 84, Part 7, Ex. F, at 2. These statements (plus the allegations of inadequate processing of

past grievances) should be considered the initial application and they clearly raises issues of sex

discrimination and retaliation.[1] Based on this record, additional acts not directly listed but related

to Porter's theories of sex discrimination and retaliation should be considered part of this case.

Porter's theory of age discrimination is not present in either the formal complaint in 1991 or the

---

[1]In this case, Plaintiff does not appear to be alleging any form of discrimination based on disability.

subsequent investigation.  The Ninth Circuit has dismissed claims for failing to exhaust

administrative remedies when plaintiffs raise theories of discrimination that were not part of the

EEOC complaint. See Leong v. Potter, 347 F.3d 1117, 1121 (9th Cir. 2003) (race, color, religion,

sex, national origin, and age discrimination alleged but not disability); Rodriguez v. Airborne

Express, 265 F.3d 890, 897 (9th Cir. 2001) (national origin discrimination alleged but not

disability).

The issue of hostile work environment is more complicated.  In order to state a hostile

work environment claim based on sex discrimination, a plaintiff must show "(1) [he/]she was

subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and

(3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment." Craig v. M&O Agencies, Inc., 496

F.3d 1047, 1055 (9th Cir. 2007), quoting Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir.

1995).  None of Porter's allegations include any hint that Osgood's allegedly objectionable

behavior was sexual in nature.  The Ninth Circuit also recognizes a retaliation based hostile work

environment claim: "Harassment is actionable only if it is sufficiently severe or pervasive to alter

the conditions of the victim's employment and create an abusive working environment. It must

be both objectively and subjectively offensive. To determine whether an environment is

sufficiently hostile, we look to the totality of the circumstances, including the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work

performance." Ray v. Henderson, 217 F.3d 1234, 1245 (9th Cir. 2000).  Another consideration is

"the employer's possible knowledge of that conduct and failure to take remedial action." Tart v.

Hill Behan Lumber Co., 31 F.3d 668, 672 (8th Cir. 1994).  "Administrative claims are to be

construed broadly in the Title VII context." Davis v. Team Elec. Co., 520 F.3d 1080, 1091 n.5

(9th Cir. 2008).

In this case, the actual history of the investigation is also relevant.  Porter provided an

affidavit as part of the investigation in which he stated, "To work under these condition, that is,

to not know what is expected of you and what your job is all about, has created an extremely

stressful and hostile work environment." Doc. 84, Part 2, Ex. 1A, at 2.   Similarly, Osgood

provided an affidavit in which she states, "I have been restricted by my supervisor not to meet

with Ron on a one-on-one basis unless our current PMA is present....These restrictions are not

my choice, however, they are basically to assist us (Ron and myself) with our conversation flow

which has the potential to create a stressful and hostile work environment for all concerned."

Doc. 84, Part 3, Ex. 1B, at 2.  The October 27, 1992 report of investigation includes the findings

that "Complainant and his supervisor have a history of a[n] argumentative and stressful working

relationship beginning sometime in or about November 1989 and is continuing....Complainant's

supervisor does not have a history of hostile and stressful working relationships with her other

subordinates." Doc. 82, Part 2, Ex. 1-E, at 24.

 Given the entire context, it appears that Porter may have exhausted administrative

remedies for a retaliation based hostile work environment claim.  Ninth Circuit precedent

suggests that a plaintiff can file suit on an unstated legal theory as long as it relies on factual

allegations contained in the EEO complaint and the investigation develops those facts: "While

the EEOC charge does not contain the relevant legal theory of retaliation, it does contain the

relevant factual allegations. The EEOC charge alleges that Berglund harassed Vasquez and that

he was transferred out of turquoise cottage, the same acts specified as retaliation in his claim.

Because an investigation of the EEOC charge would likely have revealed Vasquez's earlier

grievance against Berglund, a claim of retaliation could have 'grown out of the charge.' We

conclude that Vasquez did exhaust his administrative remedies as to this part of his claim."

Vasquez v. County of Los Angeles, 349 F.3d 634, 645-46 (9th Cir. 2003).  The Seventh Circuit

has found that "the EEOC charge and the complaint must, at minimum, describe the same

conduct and implicate the same individuals." Cheek v. Western & S. Life Ins. Co., 31 F.3d 497,

501 (7th Cir. 1994).  Here, Plorter alleges that Osgood confronted him in a harassing manner due

to his previous filing of EEO complaints and made reference to "further retribution."  Porter's

complaints that his past grievances were improperly handled constitutes an allegation that the

Navy knew of the problem with Osgood and had failed to rectify it.  Through the investigation,

more incidents of friction between Porter and Osgood (which Porter alleges were motivated by

retaliation) were explored. The term "hostile work environment" also surfaced in the investigation, though it may not have been used as a legal term of art. The factual allegations Porter relies upon for his claim were known and investigated by the Navy. In context, it appears that the Navy was on notice of a possible retaliation based hostile work environment claim. Rush v. McDonald's Corp., 966 F.2d 1104, 1112 (7th Cir. 1992) ("the appropriate standard for measuring exhaustion is not those charges that the EEOC in fact considered, but those that were brought to its attention").

The Navy is correct in asserting that much of the Ninth Circuit case law concerning exhaustion of hostile work environment claims where it is not specifically plead in an EEOC filing is unpublished and not citable. The Navy cites to a number of opinions from other circuits on this precise issue, but they can largely be distinguished. See Mathirampuzha v. Potter, 548 F.3d 70, 76-78 (2nd Cir. 2008) (EEO complaint alleged race discrimination based on a single aggressive physical attack with no reference to any other incidents; court found no exhaustion based on the lack of "reference to repeated conduct or the cumulative effect of individual acts"); Chacko v. Patuxent Inst., 429 F.3d 505, 512 (4th Cir. 2005) (EEOC complaint alleged race and sex discrimination by supervisors while his hostile work environment court claim was based on actions of coworkers); Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 838 (8th Cir. 2002) (EEOC filing alleged age discrimination based on failure to promote but made no reference to any incident of a harassing nature); Park v. Howard Univ., 71 F.3d 904, 908 (D.C. Cir. 1995) (EEOC filing alleged race and sex discrimination based on failure to promote but made no reference to any incident of a harassing nature). The court makes no representations as to whether Porter's complaint adequately states a hostile work environment claim, only that he sufficiently put the Navy on notice of a possible claim. But cf. Hottenroth v. Slinger, 388 F.3d 1015, 1035-36 (7th Cir. 2004) (plaintiff's EEOC filings formally alleged sex discrimination and retaliation; "Such vague and unsupported statements clearly fall far short of establishing a claim of a hostile work environment. In her [EEOC] complaints, Hottenroth alleges no specific evidence of anything which could reasonably be considered either objectively or subjectively hostile. If this court were to hold otherwise, any complainant, who at any time filed any manner

of claim with the EEOC, could collaterally attack an adverse ruling on hostile work environment grounds. Thus, because Hottenroth has failed to exhaust her administrative remedies as to her hostile work environment charge and because she has not otherwise established a cognizable hostile work environment claim..."; suggesting administrative exhaustion and sufficiency of statement of claim is the same standard).

Porter's constructive involuntary transfer claim is not part of 1991-003. Porter changed position from Plant Account Technician to Computer Assistant starting on January 17, 1993 with the change becoming permanent on June 13, 1993. These acts are well outside of the time frame of the case. Further, it appears that such a claim is more properly part of Agency Case 1993-021 which dealt with his performance evaluation for 1991-92 and alleged retaliation during the period Porter was contemplating the transfer of positions.

**4. Agency Case 1990-002**

In Agency Case 1990-002, Porter alleged he was denied a noncompetetive career ladder promotion (from DG-2 to DG-3) in August 1989 due to sex discrimination. Plaintiff alleges that the present district court case is comprised of "the discrete incidents as well as the continuing hostile working environment that flowed from the 1990-002 case, into the issues of the 1991-003 case and then into the issues of the 1993-015 case..." Doc. 71, SAC, at 15:4-7. Agency Case 1990-002 was processed separately from Agency Case 1991-003. Porter was ultimately promoted retroactively, but the parties dispute the amount of bonus he is entitled to. In fact, there is no end point to the administrative proceedings in that case. The last solid record is a decision of the EEOC on appeal in which the Navy's final agency decision was vacated and the case remanded. Porter v. Danzig, EEOC DOC 01973979, 1999 WL 448091 (E.E.O.C. June 22, 1999). "To date, Navy has not issued the required Final Agency Action explaining how it determined what increments and bonuses Porter was entitled to receive as the result of his retroactive promotion." Doc. 71, SAC, at 5:13-15. Porter does not appear to be directly disputing the amount of backpay awarded in Agency Case 1990-002 at this time. Indeed, Porter admits administrative proceedings are still ongoing in the absence of final agency action.

**B. Mootness**

In the active complaint, Porter seeks "all equitable and injunctive relief, and legal damages." Doc. 71, SAC, at 15:18-19. The Navy argues this case is moot due to the fact that no effective remedy can be granted. When the actions giving rise to this suit took place, an older version of Title VII applied. The Civil Rights Act of 1991, 102 P.L. 166, took effect on November 21, 1991 and broadened the remedies available under Title VII. The older law states

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 704(a) [retaliation].

Law of March 24, 1972, 42 U.S.C. §2000e-5(g) (amended November 21, 1991). The U.S. Supreme Court opined that the pre-amendment law "focuses on legal injuries of an economic character, consisting specifically of the unlawful deprivation of full wages earned or due for services performed, or the unlawful deprivation of the opportunity to earn wages through wrongful termination. The remedy, correspondingly, consists of restoring victims, through backpay awards and injunctive relief, to the wage and employment positions they would have occupied absent the unlawful discrimination. Nothing in this remedial scheme purports to recompense a Title VII plaintiff for any of the other traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages (e. g., a ruined credit rating)." United States v. Burke, 504 U.S. 229, 239 (1992), citations and quotations omitted. In this case, there are three categories of potential relief for discrimination and/or retaliation: compensatory damages, backpay, and injunctive relief.

**1. Compensatory Damages**

"Porter does not claim compensatory damages for discriminatory actions occurring prior to 21 November 1991, the effective date of the 1991 Civil Rights Amendments, but does claim them for those acts encompassed within his hostile environment claim that occurred from then." Doc. 83, Part 1, Opposition, at 3:5-8. As discussed above, the actions concerning the October 22, 1991 performance evaluation for the 1990-91 period and all later events are not part of this case. Even if Porter were to succeed in establishing a hostile environment claim based on the totality of the events comprising of the Agency Case 1991-003, the pre-amendment law does not allow for compensatory damages.

**2. Backpay**

The Navy asserts "Backpay cannot be awarded, because the alleged discrimination caused no loss of pay, and because plaintiff expressly disavowed any claim for backpay in this action five years ago." Doc. 80, Brief, at 2:2-5. Porter disagrees, citing to the March 12, 2007 Joint Scheduling Report in which he laid out his theory for recovering backpay:

> In Porter's prior case [Agency Case No. 90-60530-002], the Navy adopted its EEO investigator's finding that Supervisor Deborah Schlick had discriminated against Porter on the basis of sex in that he was denied a non-competitive (career ladder) promotion during the time period preceding that of the present case. The EEOC ordered the Navy to provide Porter with annual bonuses and pay increments for the prior period in question....As the instant case has developed, Porter now maintains that the increments and bonuses that Porter received because of the prior discrimination were only to provide relief for that prior discrimination, and that any increments and bonuses that Porter was denied because of the alleged discrimination in the instant case are separate and distinct from any other relief he received because of the discrimination in the prior case.

> In Porter's next case [Agency Case No. 93-60530-015], which covers the time period immediately after the present case, after a full administrative hearing, an EEOC Administrative Judge ["AJ"] "found that the agency [Navy] retaliated against complainant [Porter] when (1) the agency gave him a poor performance appraisal for the performance evaluation period beginning August 1, 1990 and ending July 31, 1991; and (2) complainant's first-line supervisor [Deborah Schlick] failed to follow agency rules, regulations, and procedures for the issuance of the performance appraisal for the period of 1 August 1990 and ending July 31, 1991, in violation of Title VII of the Civil Rights Act of 1964 (Title VII)....Porter was awarded relief including correction of the performance appraisal and an adjustment of the increments and bonuses he would have received absent the discrimination in this subsequent case.

> Porter now maintains that the discrimination in the instant case [Agency Case No. 91-60530-003] - the case between the above 2 cases - denied him increments and bonuses

that are additional to the relief awarded him in the subsequent case [Agency Case No. 93-60530-015]. Porter asserts that the relief arising from Agency Case No. 93-60530-015 does not provide him full backpay (such as additional increments and bonuses) that he would have received absent the discrimination in the instant case, and that the denial of such backpay impacted his subsequent employment standing with the Navy. On the other hand, Porter understands that the Navy contends that the backpay relief (increments and bonuses) he received in the prior and subsequent cases fully covers any backpay he would be entitled to in the instant case. Porter maintains that this is a question of fact to be determined.

Doc. 33, Joint Scheduling Report, at 3:14-5:10. Porter admits that Agency Case 1990-002 deals with his pay and position in the 1989-90 period and Agency Case 1993-015 deals with his pay pay and position in the 1990-91 period. In fact, in Agency Case 1990-002, Porter rejected the Navy's July 2, 1992 offer in part because it did not "address the possibility of additional increments from 1989 to the present based on the retroactive promotion." Porter v. Kelso, EEOC DOC 01930051, 1993 WL 1505233, *2 (E.E.O.C. April 19, 1993). Thus, Agency Case 1990-002 covers all residual effects of the alleged discrimination that may have spilled over to the time frame of this case. Porter's argument is that the allegations of this case create an independent basis for backpay above any beyond that which was awarded in those cases.

Under the operative law, Plaintiff can only recover backpay in connection with a distinct and explicit employment action that directly affects his pay. "[E]ven if unlawful discrimination was proved, under prior law a Title VII plaintiff could not recover monetary relief unless the discrimination was also found to have some concrete effect on the plaintiff's employment status, such as a denied promotion, differential in compensation, or termination." Landgraf v. Usi Film Prods., 511 U.S. 244, 254 (1994). Porter's case has been reduced to "Osgood's inappropriately discussing Porter's performance and performance plan in front of other employees on 25-26 September 1990, the 22 June 1990 Osgood e-mail to Porter, the discriminatory processing of two 21 May 1990 grievances submitted to Capt. Cook (the base commander and EEO Officer)." Doc. 71, SAC, at 5:25-7:1. These allegations do not constitute actions that have any concrete effect on Porter's employment status; they did not affect his pay or position. Porter can not recover backpay as part of this suit.

**3. Injunctive Relief**

Porter states "Navy has not restored Porter to federal service, even though its actions (as demonstrated by those cases which already have findings of discrimination and/or reprisal) caused injury to occur." Doc. 71, SAC, at 15:13-15. The court interprets that to be a request for reinstatement to his position as Plant Account Technician. Porter also asserts that he seeks "injunctive relief in this case concerning the processing of grievances and EEO complaints. The record shows Navy practices in use in 1990 with regard to processing them continued until at least April 2007 and no evidence shows they have changed." Doc. 83, Part 1, Opposition, at 2:25-28.

As discussed above, this case does not include a constructive involuntary transfer claim. Porter switched positions in 1993, from being a Plant Account Technician to a Computer Assistant within the Information Systems Department and again in 1996 to become a Computer Assistant in the Engineering Weapons/Target Department. All the issues dealing with the 1999 reduction in force are part of 07-0825. Again, the applicable law states, "No order of the court shall require...the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was...discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 704(a) [retaliation]." Law of March 24, 1972, 42 U.S.C. §2000e-5(g) (amended November 21, 1991). Porter is not entitled to reinstatement as part of this suit.

Since there is no prospect that Porter will regain his position with the Navy as part of this case, he does not have standing to seek an injunction reforming th Navy's workplace nondiscrimination policies. The Navy cites to a case directly on point:

> To have standing to bring a claim for relief, a plaintiff must show that she has (1) suffered an injury that (2) was caused by the defendant and (3) is likely to be redressed by the relief she seeks. Walsh's complaint satisfies the first two standing prongs, since she asserts that the Department discriminated against her due to her disability. But her complaint does not satisfy the third. Walsh is no longer an employee of the Department. She admits that her employment ended in 2004. There is no indication in the complaint that Walsh has any interest in returning to work for the State or the Department. Therefore, she would not stand to benefit from an injunction requiring the anti-discriminatory policies she requests at her former place of work. Some case law in this circuit indicates that a non-employee may have standing to sue for injunctive relief against an employer, but those non-employees were in the process of seeking reinstatement to their former positions, or seeking work from that employer. See Freitag v. Ayers, 463 F.3d 838, 2006 WL 3110975 (9th Cir. 2006); Nanty v. Barrows Co., 660

F.2d 1327 (9th Cir. 1981). Walsh, therefore, lacked standing to sue for injunctive relief from which she would not likely benefit.

Walsh v. Nev. Dep't of Human Res., 471 F.3d 1033, 1036-37 (9th Cir. 2006), citations omitted.

Freitag gives a general outline to the applicable law.

> when the district court issued its injunction, Freitag was still in the process of pursuing her state administrative appeal in which she maintains that she is entitled to retain her position as a correctional officer at Pelican Bay...In Nanty, we held that a Native American truck driver was unlawfully discriminated against under Title VII when a company failed to hire him because of his race. Although we remanded Nanty's request for an injunction requiring the company to hire him because the record was not clear whether it would have given him the job absent its discriminatory actions, we held that he nevertheless was entitled to an injunction prohibiting the company from discriminating on the basis of race in its future hiring. We affirmed the injunction in part because the question whether the plaintiff was entitled to the job he sought had not been finally resolved and, thus, he retained a personal interest in ensuring that the company's discriminatory activity be enjoined.
>
> In California, permanent state employees possess a property interest in their job, guaranteed by statute, with attendant due process rights in their continued employment. That interest and the attendant rights are not lost upon termination but continue post-termination pending the final resolution of the administrative proceeding before the Personnel Board. The administrative process that will determine whether Freitag remains entitled to her job with the CDCR is pending, and thus her property interest and due process rights have not been extinguished. More important, at the time the district court issued the injunction, Freitag possessed a property interest in her job and thus possessed a sufficient connection to her employment with the prison to support the issuance of an injunction in her favor. We conclude, as did the district court, that she has standing to seek an injunction affecting the employment practices of the CDCR.

Freitag v. Ayers, 463 F.3d 838, 857 (9th Cir. 2006), citations omitted. Freitag also refers to a Northern District of Georgia opinion in which injunctive relief of the kind Porter is seeking was denied:

> Plaintiff notes that she has an outstanding claim against defendants for constructive discharge and that, if she is successful with that claim, she 'may indeed find herself reinstated.' This is too speculative a reason to grant the relief requested by plaintiff as part of this litigation. For purposes of the instant action, plaintiff did not contend that she was constructively discharged and did not seek damages for any period after her termination. Plaintiff also states that, 'post-judgment, [she] will move the Court for a determination of the appropriateness of reinstatement to the position of General Manager, or in lieu thereof, an award of front pay.' The court will address any issues related to such a motion when, and if, plaintiff files it.

Rau v. Apple-Rio Mgmt. Co., 85 F. Supp. 2d 1344, 1351 n.4 (N.D. Ga. 1999). On balance, Porter's situation is very close to that of the plaintiff in Rau. Though he has expressed an interest in being reinstated, constructive discharge is not part of this suit; to the extent that injunctive

1  relief reforming the Navy's nondiscrimination policies is proper, it is viable only in conjunction
2  with a claim for reinstatement.

4                                    **IV. Order**
5          The Navy's motion to dismiss is GRANTED.  This case is dismissed for lack of subject
6  matter jurisdiction due to MOOTNESS.  The clerk of the court is directed to close this case.

8  IT IS SO ORDERED.
9  **Dated:    February 21, 2010                      /s/ Anthony W. Ishii**
                                          CHIEF UNITED STATES DISTRICT JUDGE